O

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| **ROSALINDA DELGADO, Individually and on Behalf of the Estate of Jorge Alberto Meza,** | § § § § | |
| *Plaintiff,* | § | |
| v. | § § | CIVIL ACTION NO. 5:04-cv-182 |
| **WEBB COUNTY, TEXAS; WEBB COUNTY SHERIFF'S DEPARTMENT; and WEBB COUNTY SHERIFF JUAN GARZA, Individually and in his Official Capacity,** | § § § § § § § | |
| *Defendants.* | § | |

## OPINION & ORDER

Pending before the Court is Defendants' Motion to Dismiss. [Dkt. No. 18]. Upon due consideration of Defendants' Motion, the responsive filings, and the governing law, the Court GRANTS Defendants' Motion.

### I.    PROCEDURAL BACKGROUND AND RELEVANT FACTS

Decedent Jorge Alberto Meza died while incarcerated in the Webb County Jail, apparently by abusing illicit drugs. [Dkt. No. 1, ¶ 7]. Plaintiff, Rosalinda Delgado, Decedent's mother, brought this suit advancing two claims. First, she invoked 42 U.S.C. § 1983, claiming that Defendants deprived Decedent of his Eighth and Fifth Amendment rights; specifically, Plaintiff alleges that Defendants were deliberately indifferent to Decedent's safety by way of their failure to control drug use in the Jail, which Plaintiff essentially equates to the affirmative provision of drugs to inmates. [Dkt. No. 1, ¶¶ 8-13]. Second, Plaintiff sued Defendants for wrongful death under the

Texas Tort Claims Act [TTCA], arguing that Defendants' failure to maintain a drug-free jail, and related acts and omissions, proximately caused Decedent's death. [Dkt. No. 1, ¶¶ 14-22].

On September 20, 2005, all Defendants filed their Motion to Dismiss. [Dkt. No. 18]. The Court granted Defendants' Motion as to all claims against Defendant Webb County Sherriff's Department. [Dkt. No. 28 at 3-4]. The Court further dismissed Plaintiff's wrongful death claims under the TTCA against Defendant Webb County, [Dkt. No. 28 at 14], but denied dismissal with respect to Plaintiff's § 1983 claim against Webb County.[1] [Dkt. No. 28 at 9].

With respect to Plaintiff's § 1983 and wrongful death claims against Defendant Garza in his individual capacity, the Court ordered Plaintiff, pursuant to Rule 7(a) of the Federal Rules of Civil Procedure, to respond to Defendant Garza's assertion of qualified immunity. [Dkt. No. 28 at 14]. Plaintiff complied on February 16, 2006. [Dkt. No. 30]. Defendants' Reply to Plaintiff's Rule 7(a) brief is in the form of a Motion for Summary Judgment or, in the Alternative, Motion to Dismiss. [Dkt. No. 34].

Because Plaintiff has not engaged in discovery with respect to Defendant Garza, the parties' arguments are based almost entirely on whether Plaintiff's filings allege facts which, if assumed true, state a cause of action. Indeed, in the context of a § 1983 suit against a public official who asserts the defense of qualified immunity, courts should entertain "pre-discovery motion[s] for dismissal or summary judgment" that require the Plaintiff to "put forward specific, nonconclusory factual allegations" tending to defeat the qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). This is because public officials should "not [be]

---

[1] Defendants state that "the only remaining claims [are those] against Sherriff Juan Garza in his personal capacity." [Dkt. No. 34 at 1 n.1]. This is not true. Until today, Plaintiff's § 1983 claim against Webb County has survived, albeit only to the extent it is not impermissibly premised on the theories of negligence or *respondeat superior*. [Dkt. No. 28 at 9]. That Defendants understand this is evidenced by the fact they devote much of their brief to attacking Plaintiff's claim of municipal liability—*i.e.*, Plaintiff's allegation that a municipal "policy" or "custom" caused the constitutional injury.

2

subjected to unnecessary and burdensome discovery or trial proceedings." *Id.* Therefore, despite the title of Defendants' Motion, the Court applies not the "genuine issue of material fact" rubric traditionally applied in the summary judgment context, *see* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986), but rather asks whether, "assuming the truth of the plaintiff's allegations, the official's conduct" precludes the affirmative defense of qualified immunity. *Crawford-El*, 523 U.S. at 598.

Thus, at first glance, the sole issue presently before the Court is whether Defendant Garza's assertion of qualified immunity warrants dismissal of Plaintiff's claims against him in his individual capacity. However, as will be explained later, the Court's answer to this question compels dismissal/summary judgment as to Plaintiff's remaining § 1983 claim against Webb County.

## II.   DISCUSSION

Whether a defendant may successfully assert qualified immunity is a question of law, not fact. *Crawford-El*, 523 U.S. at 589. When a defendant asserts qualified immunity, the dispositive inquiry is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz and In Defense of Animals*, 533 U.S. 194, 201 (2001). Second, the reviewing court determines whether the right allegedly violated was "clearly established" when the injury occurred. *Id.*

Since it is fairly easy to allege the violation of a constitutional right, and since the thrust of qualified immunity is the "good faith" of the official-defendant, upon evaluation of a plaintiff's Rule 7(a) Response a reviewing court focuses largely on the second prong of the above analysis. Thus, the court must determine whether, "assuming the truth of the plaintiff's allegations, the

3

official's conduct violated clearly established law." *Crawford-El*, 523 U.S. at 600. In order for the right allegedly violated to count as "clearly established law," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [was] doing violat[ed] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### A.  Qualified Immunity

Plaintiff claims that Defendants violated Decedent's Eighth Amendment right to be free from cruel and unusual punishment. [Dkt. No. 1, ¶ 10]. When an incarcerated plaintiff utilizes § 1983 to vindicate physical harm caused by the lack of medical treatment, or the custodian's failure to otherwise keep the plaintiff safe, the "cruel and unusual" punishment prohibition translates into a prisoner's right to be free from "deliberate indifference" to his physical needs, "whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

Importantly, in order to sufficiently plead deliberate indifference, a plaintiff must allege more than mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Actions and decisions by officials that are merely inept, erroneous, [or] ineffective . . . do not amount to deliberate indifference and do not divest officials of qualified immunity". *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)). Rather, deliberate indifference is likened most often to "recklessness," or "wantonness." *See Wilson*, 501 U.S. at 299; *Farmer*, 511 U.S. at 825.

Thus, the Court must decide whether, taking Plaintiff's allegations as true, a reasonable officer in Defendant Garza's position would have understood that he was violating the law; that

is, whether that reasonable officer would have understood that he was acting with deliberate indifference towards Decedent's safety.

In attempting to plead such a heightened scienter, Plaintiff alleges that:

> Sheriff Garza was deliberately indifferent to the availability of drugs in his jail. While under his watch, the jail was operating under a remedial order from the [S]tate for citations for numerous violations, including problems with jail employees. Sheriff Garza's acts or omissions by failing to institute policies and/or supervise and/or train employees sufficiently lead [sic] to the continuation of this known problem.

[Dkt. No. 36 at 9].

Plaintiff never alleges that Sheriff Garza knew that Meza, specifically, was using drugs. Ironically, Plaintiff's included exhibits actually reinforce the notion that Defendants Garza and Webb County made strong efforts to remedy the very problems Plaintiff highlights to demonstrate deliberate indifference. For example, Plaintiff's Exhibit A is a Webb County Press Release which indicates that Webb County, lead by a "task force" *of which Sherriff Garza was specifically a part*, made "amazing" improvements in order to bring the Jail into compliance with State prison standards. [Dkt. No. 38, Ex. A (quoting the Chairman of the Texas Commission on Jail Standards)]. Importantly, the Press Release indicates that these improvements began months before Decedent's death, which strongly contradicts the notion that Sherriff Garza or Webb County were deliberately indifferent to the physical safety and needs of the jail's inmates at the time of Meza's death. Likewise, Plaintiff's Exhibit B is the Official Minutes for Webb County Commissioner's Court Special Meeting dated July 14, 2004, in which the Texas Attorney General is quoted as stating that the alleged violations of State prison standards in the jail were "minor or no infractions [sic]," and that the County had demonstrated its "Commitment to remain compliant" with state standards. [Dkt. No. 36, Ex. B at 15-16]. Interestingly, none of these

Exhibits mentions the use or distribution of illicit drugs as a focus of the State's regulatory concern.

The specific facts alleged, as a matter of law, cannot give rise to deliberate indifference, regardless of whether Plaintiff injects into her narrative terms and phrases evocative of such culpability. Plaintiff's own evidence demonstrates that Decedent's death was, at most, caused by Defendants' failure to do their respective jobs flawlessly. Such is insufficient to qualify as deliberate indifference. Defendant Garza's alleged failure to stem the flow of drugs into the prison, despite programs implemented to do so, is precisely the type of official conduct—*i.e.*, "ineptness" or "ineffectiveness"—to which the defense of qualified immunity attaches. *See Alton*, 168 F.3d at 201.

Based on the pleadings and numerous responsive filings, Plaintiff cannot show that a reasonable officer in Defendant Garza's position would have understood his conduct as violative of Decedent's Eighth Amendment rights. All of Plaintiff's claims against Defendant Garza must fail per the latter's assertion of qualified immunity. The Court must now examine the implications of this determination for Plaintiff's § 1983 municipal liability claim against Webb County.

### B.  Municipal Liability

Defendants inexplicably spend most of their Reply brief arguing that Plaintiff has failed to articulate a custom or policy on the part of Webb County sufficient to give rise to municipal liability. However, in its January 16th Memorandum, the Court found that Plaintiff did indeed sufficiently allege municipal custom, and noted that Plaintiff's § 1983 municipal liability claim could survive, albeit only to the extent that it did not impermissibly rest on a theory of negligence or *respondeat superior*. [Dkt. No. 28 at 9]. In subsequent pages, the Court deferred

consideration of Plaintiff's claims against Defendant Garza individually, pending Plaintiff's Rule 7(a) Response to the latter's assertion of qualified immunity. [Dkt. No. 28 at 14]. Importantly, Plaintiff's municipal liability claim is dependent on Defendant Garza's deliberate indifference, as the premise of a municipal liability claim is that the officer's conduct is a manifestation of municipal policy or custom. Because Plaintiff's Eighth Amendment argument against Webb County inherently relies on the showing that Defendant Garza acted with deliberate indifference, the Court's previous opinion should be read as recognizing in Plaintiff's municipality claim a tentative and precarious cognoscibility that could be subsequently forfeited should Plaintiff make clear that the basis of that claim is in fact negligence, rather than deliberate indifference, on the part of Defendant Garza. Plaintiff's Rule 7(a) Response does just that.

As already stated, the tortious conduct giving rise to Eighth Amendment tort liability in this context is deliberate indifference. If Decedent was not injured as a result of deliberate indifference, but rather negligence, such injury is non-actionable as an Eighth Amendment tort under § 1983 against any Defendant, municipality or otherwise. The Court's finding that a reasonable officer in Defendant Garza's position would not have believed he was acting with deliberate indifference towards Decedent's safety precludes a reasonable fact-finder from concluding that Plaintiff has satisfied the scienter prong of her substantive § 1983 claim against Webb County. Behavior that is dangerous cannot be *deliberate* indifference if the actor, being a reasonable person, would not understand her behavior as reckless. Rather, such unknowing breach of care sounds in mere negligence. In other words, assuming the truth of Plaintiff's well-pled factual allegations, she cannot show Defendant Webb County acted with deliberate indifference toward Decedent's safety.

Plaintiff's § 1983 claims against both Defendants Webb County and Sherriff Garza impermissibly rely on a theory of negligence, even though the terms "reckless" and "deliberate indifference" are employed to describe conduct decidedly not commensurate with such language. No court with an eye towards administrative efficiency, and an appreciation for the public burden § 1983 municipality suits invariably impose, can responsibly ignore the reality that this renders both claims infirm, and that they should not be prosecuted further.

### C. Plaintiff's Fifth Amendment Claim

As mentioned earlier, Plaintiff in her Complaint alleges violations of Decedent's rights under the Eighth Amendment as well as the Fifth Amendment. To date, Plaintiff has failed to articulate her Fifth Amendment argument, but rather has focused solely on the deliberate indifference allegations sounding in an Eighth Amendment prisoner claim. Therefore, because Plaintiff has failed to put either the Court or Defendant on notice as to the nature of her Fifth Amendment claim, that claim must be dismissed. *See Mayle v. Felix*, 545 U.S. 644 (2005) (Describing the pleading standard established by Federal Rule of Civil Procedure 8(a) as requiring "fair notice of what the plaintiff's claim is and the grounds upon which it rests." (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

### III.    CONCLUSION

The Court's legal conclusion that a reasonable officer in Defendant Garza's position would not have understood his conduct as violative of Decedent's Eighth Amendment rights means that Plaintiff cannot recover against Webb County, since her municipality claim rests on the predicate deliberate indifference of Defendant Garza. If Garza could not be deemed to have acted with deliberate indifference, Webb County's policies cannot be deemed tortious.

Defendants' Motion for Summary Judgment or, in the Alternative, Motion to Dismiss is **GRANTED** in its entirety.

IT IS SO ORDERED.

DONE this 19th day of January, in Laredo, Texas.

Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**